UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

DESHAWN DRUMGO,

                Plaintiff,

     v.

CPL. REGINALD BROWN, SGT. THOMPSON,
SGT. JAMES THOMAS, LT. STEVENSON,
STAFF LT. KAREN D. HAWKINS, SGT.
LLOYD MCGILL, and SGT. MICHAEL
MAANS,

                Defendant.

Civil No. 08-592 (JBS)

**MEMORANDUM
OPINION**

**SIMANDLE,** District Judge:

Plaintiff DeShawn Drumgo ("Drumgo"), currently confined at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this Complaint pursuant to 42 U.S.C. § 1983 alleging excessive force, failure to protect, and unlawful conditions of confinement in violation of the Eighth Amendment of the United States Constitution.

Plaintiff seeks injunctive relief pursuant to Fed. R. Civ. P. 65(b) ordering his transfer to a different prison facility because of two violent confrontations with prison officers over a period of three years, repeated destruction and interference with his legal documents, tampering with his food including placing hair and saliva in his food, denial of certain religious materials, temporary denial of access to water and toilet, and denial of medical treatment. (D.I. 44, 45, 46.) He also seeks an order prohibiting prison officials from confiscating his legal

files.  The motions were filed on July 30, 2010.  The Court asked
Plaintiff to provide additional supportive information and
Defendant to investigate Plaintiff's most urgent allegations
(i.e., that he may be receiving severely inadequate medical
treatment and that he may have had his legal documents
confiscated and destroyed).  (D.I. 47.)

     Plaintiff responded by filing several affidavits.  The first
affidavit details a shakedown of his cell that occurred on July
16, 2010, and culminated in the application of a capstun gun by a
correctional officer and the removal of Plaintiff from his cell.
Apparently some of Plaintiff's civil research and/or motions and
litigation were destroyed or damaged.  (D.I. 51.)  A July 16,
2010 disciplinary report charged Plaintiff with disorderly or
threatening behavior and failing to obey an order.  He was taken
to isolation after receiving medical treatment.  (D.I. 58, ex.)

     Plaintiff's next affidavit refers to an assault and
resultant headaches and jaw numbness.  Plaintiff states that he
received Tylenol from the new medical services provider and at
some point he submitted a sick call slip complaining of
headaches, but it was ignored.  The affidavit states that
harassment has led to the confiscation of Plaintiff's legal
materials rendering future litigation impossible.  It also
required him to move for an extension of time in the Delaware
Superior Court.  He states there was tampering of his legal mail,
his legal work was sabotaged, and he was denied research and

                                  2

legal documents as well as reasonable access to the law library.[1] The affidavit provides examples of harassment, as follows: food tampering on more than one occasion, no running water or restroom on numerous occasions, Plaintiff was required to use the bathroom while handcuffed and shackled on one occasion, and he was deprived of the Qur'an, religious material and religious programs. The affidavit provides no dates and only a few names of the individuals who harassed Plaintiff. The affidavit, however, refers in general to Plaintiff's grievances.[2] (D.I. 52.)

The third affidavit refers to an assault that occurred on October 5, 2007, as well as other conditions of confinement violations. Presumably, this is the assault referred to in the first affidavit found at Docket Item 52. The affidavit is an

_____

[1] A grievance indicates that the mail tampering occurred in 2008. (D.I. 45, ex. 18.) Plaintiff's other grievances indicate that he receives legal assistance on a regular basis. (See D.I. 45, exs.)

[2] The following grievances document some of Plaintiff's complaints: (1) On January 3, 2008, Plaintiff complained that some of his Islamic books were sent home; (2) On December 26, 2009, Plaintiff complained that while housed in isolation he was not allowed to wear his kufi (i.e., a traditional skull cap worn by persons of African descent) or have his prayer rug; (3) On January 6 and 10, 2010, Plaintiff asked for his kufi and prayer rug following his release from isolation; (4) On March 2, 2010, after a visit, he was shackled for three hours and was unable to use the bathroom or drink water; (5) On May 26, 2010, Plaintiff was held in the interview room for a little over two hours before he was allowed to use the bathroom and was held overall for approximately six hours. (D.I. 45, exs. 9, 10, 15, 16, 20, 32, 33, 34.) The grievances did not refer to specific acts of food tampering as outlined in Plaintiff's affidavits.

3

exact photocopy of two pages from the Complaint titled "Statement of Claims (8th Amendment Violations). (D.I. 2, 53.) Plaintiff's first declaration and fourth affidavit merely rehash information contained in the affidavits found at Docket Items 51 and 52. (D.I. 56, 62.)

Finally, Plaintiff submitted the sworn statement of inmate Lou Garden Price ("Price"), "one of the top jailhouse lawyers" at the VCC. Price states that documents found in Plaintiff's possession were written by him and discussed Price's fee should Plaintiff want his legal assistance. (D.I. 58.) Plaintiff was punished because the documents were in his possession.

Defendants' investigation revealed that, prior to and after he filed his motions, Plaintiff submitted sick call slips on July 4, 5, 15, 18, 23, 24, 27, and 29, 2010 and received timely and appropriate medical care and treatment. A June 17, 2010 shakedown resulted in the discovery of contraband, letters from other inmates, and legal work belonging to another inmate. Plaintiff pled guilty to charges he received following the shakedown, including abuse of privileges, damage or destruction under ten dollars, possession of non-dangerous contraband, and unauthorized communication. Plaintiff was also found guilty of infractions that occurred on July 16, 2010. As of August 1, 2010, Plaintiff was housed in the Security Housing Unit ("SHU") with loss of all privileges for fifteen days. While housed in SHU he continued as a chronic care patient.

4

Injunctive relief in any form is "an extraordinary remedy that should be granted in 'limited circumstances.'" American Tel. and Tel. v. Winback and Conserve Program Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). It should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir.2004); NutraSweet Co. v. Vit-Mar Enterprises, Inc., 176 F.3d 151, 153 (3d Cir. 1999) ("NutraSweet II"). The elements also apply to temporary restraining orders. See NutriSweet Co. v. Vit-Mar Enterprises., Inc., 112 F.3d 689, 693 (3d Cir. 1997) ("NutraSweet I") (a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." NutraSweet II, 176 F.3d at 153. Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. Rush v. Correctional Med. Services, Inc., 287 F. App'x 142, 144 (3d Cir. 2008) (not published) (citing Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995)).

5

Case 1:08-cv-00592-GMS  Document 63  Filed 08/25/10  Page 6 of 9 PageID #: 341

"[A]n injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980)(quoting Holiday Inns of Am., Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969)). "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued."[3] SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985). If the record does not support a finding of both irreparable injury and a likelihood of success on the merits, then a preliminary injunction cannot be granted. Marxe v. Jackson, 833 F.2d 1121 (3d Cir. 1987). Plaintiff bears the burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989).

Plaintiff has not met the criteria required for injunctive relief and, therefore, he is not entitled to the relief he seeks. Initially the Court notes that with regard to Plaintiff's generalized claims he receives little to no medical care, the Court finds that Defendants' investigation documents the recent medical treatment given Plaintiff on numerous frequent occasions, and it is not probable that Plaintiff will succeed on the merits

[3]Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm").

of his claim of deliberate indifference to serious medical needs.
Nor does the record support, and Plaintiff has not demonstrated,
that  irreparable harm to his physical condition is imminent.

In addition, it is unlikely Plaintiff can succeed on his
access to the court claims.  It is well established that
prisoners must be allowed "adequate, effective and meaningful"
access to the courts.  Bounds v. Smith, 430 U.S. 817, 822 (1977)
(holding that prisons must give inmates access to law libraries
or direct legal assistance).  A violation of the First Amendment
right of access to the courts is only established where a
litigant shows that he was actually injured by the alleged denial
of access.  The actual injury requirement is a constitutional
prerequisite to suit.  Lewis v. Casey, 518 U.S. 343, 351 (1996);
Christopher v. Harbury, 536 U.S. 403, 415 (2002) (explaining that
the constitutional right of access is "ancillary to the
underlying claim, without which a plaintiff cannot have suffered
injury by being shut out of court").  An actual injury is shown
only where a nonfrivolous, arguable claim is lost.  Christopher,
536 U.S. at 415.

There is no indication from Plaintiff's filings that he has
suffered an actual injury from his alleged denial of access to
the courts.  While Plaintiff was required to file an extension of
time with the Delaware Superior Court, there is no mention the
motion was denied.  Indeed, the necessity for seeking extensions
of court filing deadlines is not unusual, even among parties

7

represented by able counsel.  Moreover, Plaintiff's grievances
indicate that he receives adequate legal assistance.  Finally,
the claim that the taking of legal material impedes Plaintiff's
ability to file future lawsuits does not implicate imminent harm.
Rather, it speaks to a remote future injury.  The Court,
therefore, concludes that Plaintiff has neither demonstrated the
likelihood of success on the merits, nor has he demonstrated
irreparable harm to justify injunctive relief.

     With regard to Plaintiff's claims of harassment by prison
guards, the affidavits submitted do not provide adequate evidence
for this Court to order preliminary injunctive relief.   The
record indicates that Plaintiff's claims of harassment allegedly
occurred sporadically, and it is far from clear that the acts are
related.   The facts do not suggest a pattern of cruelty by
any particular individual rising to the level of an
Eighth Amendment violation.  Notably, the grievances and
Plaintiff's affidavits do not indicate that he is in danger of
suffering irreparable harm as a result of the acts of which he
complains.   If ultimately Plaintiff succeeds on his claims of
harassment in violation of constitutional rights, such claims are
compensable in money damages and are not "irreparable" in any
event.

     Finally, the ultimate relief Plaintiff seeks is an order
transferring him to a different prison facility.  However, said
relief is unavailable to him upon the present record.   The

Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities such authorities designate.  <u>Walls v. Taylor</u>, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing <u>Brathwaite v. State</u>, No. 169, 2003 (Del. Dec. 29, 2003).  Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state.  <u>Olim v. Wakinekona</u>, 461 U.S. 238, 251 (1983).  Accordingly, Plaintiff cannot demonstrate the likelihood of success to warrant the relief he seeks.  The Court does not rule out the possibility that court-ordered transfer could be awarded as equitable relief from unconstitutional conditions of confinement, but Plaintiff Drumgo has not shown entitlement to such a transfer upon the present record.

    Upon review of Plaintiff's affidavits and grievances, as well as the results of Defendants' investigation, the Court finds that Plaintiff has neither shown the likelihood of success on the merits or that he is danger of suffering irreparable harm. Accordingly, the Court will deny Plaintiff's motions for preliminary injunctive relief.

    The accompanying Order shall be entered.

                                    Jerome B. Simandle

                                    JEROME B. SIMANDLE
                                    U.S. District Judge

9