<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

```
_____ :
                                :
DESHAWN DRUMGO,                 :
                                :    HON. JEROME B. SIMANDLE
          Plaintiff,            :
                                :    CIVIL NO. 08-592 (JBS-AMD)
     v.                         :
                                :
CPL. REGINALD BROWN, et al.,    :    OPINION
                                :
          Defendants.           :
_____ :
```

APPEARANCES:

Deshawn Drumgo, <u>pro</u> <u>se</u>
SBI # 365566
James T. Vaughn Correctional Center
Smyrna, Delaware 19977
     Plaintiff

Ophelia Michelle Waters, Esq.
Deputy Attorney General
Delaware Department of Justice
Wilmington, Delaware
     Counsel for Defendants Cpl. Reginald Brown, Sgt. Thompson,
     Sgt. James Thomas, Lt. Stevenson, Staff Lt. Karen D.
     Hawkins, Sgt. Lloyd McGill, and Sgt. Michael Maans

**SIMANDLE,** District Judge

I.   **INTRODUCTION**

       This matter is before the Court on Defendants Cpl. Reginald

Brown ("Brown"), Sgt. Thompson ("Thompson"), Sgt. James Thomas

("Thomas"), Lt. Stevenson ("Stevenson"), Staff Lt. Karen D.

Hawkins ("Hawkins"), Sgt. Lloyd McGill ("McGill"), and Sgt.

Michael Maans' ("Maans") (collectively "Defendants") Motion for

Summary Judgment and Plaintiff Deshawn Drumgo's ("Plaintiff")

Motion for Summary Judgment. [Docket Items 99, 114.] The

parties argue that their respective motions for summary judgment

should be granted. For the reasons discussed below, this Court

will grant Defendants' motion for summary judgment and will deny

Plaintiff's motion for summary judgment.

## II. BACKGROUND

The instant action is a civil rights suit alleging

violations of Plaintiff's constitutional rights pursuant to 42

U.S.C. § 1983. This Court has original jurisdiction under 28

U.S.C. § 1331.

Plaintiff is currently a sentenced inmate. During the fall

of 2007 Plaintiff was a pretrial detainee awaiting a transfer to

State court for a criminal proceeding.[1] There was a dispute over

his wearing a thermal shirt, and Plaintiff alleges that Brown,

Thompson, and Stevenson used excessive force during the incident

and Thomas and Hawkins failed to intercede to stop the use of

excessive force. [Docket Item 9.] Plaintiff also alleges that

McGill, Thomas, and Thompson retaliated against him as a result

of the altercation with Brown by contaminating or tampering with

---

[1] October 3, 2007 was the original date for trial, but it
was rescheduled to begin on October 9, 2007. Plaintiff was to
brought to State court on September 27, 2007 in case an agreement
could be satisfied for a plea. The matter proceeded to trial and
Plaintiff was found guilty of second degree murder. He was
sentenced in December 2007. (Defs.' Ex. S, Superior Court
Criminal Docket.)

his food.  Id.  Finally, Plaintiff alleges that Maans denied him access to the courts and the right to exercise his religion.  Id.

On September 27, 2007, Plaintiff was in a holding area awaiting transport to State court to attend his criminal trial. (Defs.' Ex. A, Deposition of Drumgo ("Drumgo Dep.") at 8.) Brown, Corporal Alexander ("Alexander"), Thompson, and Corporal Stiles ("Stiles") began preparing to transport detainees to the county courts.  (Defs.' Exs. B, C, D.)  Delaware Department of Correction ("DOC") policy requires that inmates must wear appropriate attire during all transport outside of the prison environs.  (Defs.' Ex. E, Affidavit of Stiles ("Stiles Aff.) at ¶ 3.; Defs.' Ex. F, Affidavit of Brown ("Brown Aff.) at ¶ 3, attachment 1; Defs.' Ex. J, Affidavit of Dave Hall ("Hall Aff".) at ¶¶ 5, 6.)  Inmates are not permitted to wear multiple layers of clothing during transport from the facility due to security concerns.  (Stiles Aff. at ¶ 3.)  Plaintiff was wearing an orange jumpsuit with a thermal sweatshirt beneath the jumpsuit.  (Brown Aff. at ¶ 3.)

According to contemporaneous incident reports dated September 27, 2007, Brown ordered Plaintiff to remove his thermal shirt several times.  (Defs.' Exs. B, C, D.)  According to Plaintiff, Brown did not order him to remove the shirt, but stated "you're not wearing" a thermal shirt.  (D.I. 144, Declaration of Drumgo ("Drumgo Decl.") at ¶ 4.)  Plaintiff did

not remove the shirt. (Defs.' Exs. B, C, D.) Brown became
concerned for his safety and retrieved his pepper spray from its
holder. (Brown Aff. at ¶ 3.) Plaintiff moved toward prison
staff and was swinging his arms. (Brown Aff. at ¶ 3.) Plaintiff
struck Brown across the left temple area. (<u>Id.</u> at ¶ 4.) Brown
and Plaintiff landed on the floor. (<u>Id.</u>) In response to
Plaintiff's actions, officers responded in subduing and
restraining Plaintiff. (Defs.' Ex. G, Affidavit of Stevenson
("Stevenson Aff.") at ¶¶ 2, 3.) Plaintiff resisted the officers'
efforts to apply shackles and handcuffs. (Defs.' Exs. B, C, D;
Stiles Aff. at ¶¶ 4, 5; Brown Aff. at ¶ 4; Stevenson Aff. at ¶
4.) As a result of the incident, responding officers suffered
the following injuries: Brown -- a bruise to the left temple and
pain in both shoulders and neck; Thompson -- a cut to the right
hand and bruising, and Stevenson a cut left middle finger.
(Pl.'s Ex. B; Defs.' Exs. B, C.)

    According to Plaintiff, during the incident Brown pointed
pepper spray at him, and when he ducked, Brown tackled and
started punching him. (Drumgo Decl. at ¶ 8.) The other officers
arrived and sprayed their pepper spray. (<u>Id.</u> at ¶ 10.) They
pulled the chain that connected Plaintiff's shackles to his legs
and Plaintiff fell to the floor. (<u>Id.</u>) Plaintiff was kicked,
stomped and punched in the back of his head with handcuffs used
as "brass knuckles." (<u>Id.</u> at ¶¶ 12, 13.) Plaintiff's body was

covered in pepper spray and he requested medical help, but he was
not taken to the infirmary. (Id. at ¶ 17.) Plaintiff complains
the incident causes him to suffer from back pain, headaches, and
on rainy days, numbness in his lower jaw and lip. (Id. at ¶¶ 20,
21.)

According to inmate Kevin Cuff ("Cuff"), when Brown told
Plaintiff that he was not going to wear a thermal shirt,
Plaintiff asked to speak to a lieutenant. [Docket Item 105.]
Plaintiff told Brown that he had asthma and would not be able to
breathe if sprayed with pepper spray. (Id.) When Plaintiff put
up his hands to ward off the pepper spray, the can fell to the
ground. (Id.) Cuff saw Brown strike Plaintiff's upper area head
and/or face, and he saw other unnamed officers assist Brown.
(Id.) According to Cuff, Brown hit Plaintiff in the back of the
head with handcuffs, and when Plaintiff was pulled up, an unnamed
officer pepper sprayed him. (Id.) According to Plaintiff,
Thomas stood by and took no action.[2] (Drumgo Decl. at ¶ 25.)

After being restrained, Plaintiff was escorted to a holding
cell and examined by medical personnel. (Defs.' Exs. B, C, D, H;
Stiles Aff. at ¶ 5; Brown Aff. at ¶ 5; Stevenson Aff. at ¶ 5.)
Plaintiff denied any pain and there was no bleeding, swelling, or

---

[2] Plaintiff now identifies Doe Defendants and state that
they either assisted in the beating or failed to intervene.
(Drumgo Decl. at ¶¶ 28, 29.) The identified Doe Defendants were
never served.

discoloration. (Defs.' Ex. H.) Plaintiff did not see Hawkins in the cell during the incident, but the next day she spoke to him about the occurrence. (Drumgo Dep. at 69.) Plaintiff also wrote to Hawkins following the incident. (Id. at 70.)

As a result of the incident, Plaintiff was charged with violating institutional rules and placed in pretrial detention. (Defs.' Ex. I.) During the disciplinary hearing, held on October 5, 2007, Plaintiff admitted that he might have swung at the can of pepper spray. (Id.) Plaintiff was found guilty of disorderly or threatening behavior and failing to obey an order and the assault charge was dismissed. (Id.) He was sanctioned to seven days isolated confinement the time already having been served. (Id.)

According to Plaintiff, following the incident, he was served contaminated chili (i.e., a hair ball covered in spit) by McGill and contaminated chicken (i.e., topped with specimens or saliva) by Thomas.[3] (Drumgo Decl. at ¶¶ 31, 32, 33' Pl.'s Ex. K.) Plaintiff wrote Hawkins regarding the alleged retaliation, but she took no action on his numerous letters. (Drumgo Decl. ¶ 27.) On October 23, 2007, Plaintiff submitted a sick call slip because he was paranoid as a result of an incident with the staff. (Defs.' Ex. K.) When Plaintiff was seen on October 30,

---

[3] Plaintiff submitted a grievance on January 31, 2008, complaining that Thomas had tampered or spit in his food and that the harassment had been ongoing since October. (Pl.'s Ex. K.)

2007, he reported that he assaulted a correctional officer on October 3, 2007 and that the other correctional officers were poisoning his food.[4] (Defs.' Ex. L-1.) Plaintiff requested a transfer to a different correctional facility.[5] (Id.) On January 10, 2008, Thomas was collecting food trays and noticed that there was feces Plaintiff's tray. (Defs.' Ex. M.) Plaintiff received a disciplinary write-up and, at the hearing, the plead not guilty stating that he did not know what it was, "we had peanut butter that day." (Id.) Plaintiff was found guilty and sanctioned.

On April 3, 2008, Maans and other security team members conducted a shakedown of Plaintiff's cell. (Defs.' Ex. N, Affidavit of Maans ("Maans Aff.") at ¶ 3.) Maans found several non-allowable items in Plaintiff's cell, including one Bible over the allowable limit. (Id. at ¶ 3.) Maans confiscated the Bible and the Quran. (Id. at ¶ 5.) The Quran was returned to Maans following the shakedown, and the Bible was secured as evidence pending disciplinary proceedings. (Id.)

On the same date, April 3, 2008, Plaintiff saw Maans throw away an envelope that contained his legal research. (Drumgo

---

[4] Plaintiff confuses the dates. The disciplinary hearing was held on October 5, 2007 and the incident at issue occurred on September 27, 2007.

[5] Plaintiff previously requested a transfer to a different correctional facility on September 17, 2009. (Defs.' Ex. L-2.)

Decl. ¶ 36.)  Maans denies throwing away Plaintiff's civil
litigation.  [D.I. 89 at ¶ 16.]

## III.  DISCUSSION

### A.  Summary Judgment Standard of Review

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  Id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  Id.

Summary judgment will not be denied based on mere
allegations or denials in the pleadings; instead, some evidence
must be produced to support a material fact.  Fed. R. Civ. P.
56(c)(1)(A); United States v. Premises Known as 717 S. Woodward
Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  The
nonmoving party must "do more than simply show that there is some
metaphysical doubt as to the material facts."  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment, after
> adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to
> establish the existence of an element essential to that

> party's case, and on which that party will bear the
> burden of proof at trial. In such a situation, there
> can be "no genuine issue as to any material fact,"
> since a complete failure of proof concerning an
> essential element of the nonmoving party's case
> necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."). When ruling on cross-motions for summary judgment "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made." J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 925 (3d Cir. 2011).

### B. Excessive Force and Failure to Protect/Intervene

Defendants move for summary judgment on the excessive force claim on the grounds that the use of force did not amount to punishment and the force was applied in a good faith effort to maintain or restore discipline. Plaintiff responds that there remain genuine issues of material fact that preclude summary judgment. Plaintiff argues that the situation could have been handled better and while he "may have seemed difficult" this did

not give Defendants a "blank check to use pepper spray and excessive force."[6]  [D.I. 144 at 7.]

The incident of which Plaintiff complains occurred while he was a pretrial detainee.  Excessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment.  Fuentes v. Wagner, 206 F.3d 335 (3d Cir. 2000); see also Sylvester v. City of Newark, 120 F. App'x 419, 423 (3d Cir. 2005) (not published).  For a Due Process violation, Plaintiff must show that the force used amounts to a wanton infliction of punishment, as opposed to an amount rationally related to exercising control. See Fuentes v. Wagner, 206 F.3d 335 (3d Cir. 2000) (Eighth Amendment's cruel and unusual punishment standards apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance).

Fuentes instructs that "when a court is called upon to examine the amount of force used on a pretrial detainee for the purpose of institutional security, the appropriate analysis is . . . whether the measure taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing

---

[6] The use of mace does not, in itself, amount to a constitutional violation.  See, e.g., Banks v. Mozingo, 423 F. App'x 123, 126 (3d Cir. 2011) (not published) (citing Couden v. Duffy, 446 F.3d 483, 505-06 (3d Cir. 2006)).

10

harm." <u>Fuentes</u>, 206 F.3d at 347.  Accordingly, the Eighth
Amendment cruel and unusual punishments standards found in
<u>Whitley v. Albers</u>, 475 U.S. 312 (1986) and <u>Hudson v. McMillian</u>,
503 U.S. 1 (1992), apply to a pretrial detainee's excessive force
claim arising in the context of a prison disturbance.[7] <u>Id.</u>
Therefore, a pretrial detainee must adduce evidence that the
force used was applied "maliciously and sadistically to cause
harm" and not "in a good-faith effort to maintain or restore
discipline." <u>Hudson v. McMillian</u>, 503 U.S. at 6.

Prison officials are accorded substantial latitude where
prison security and the safety of prisoners and officers is at
stake.  The infliction of pain in the course of a prison security
measure does not amount to a constitutional violation simply
because it may appear in retrospect that the degree of force
authorized or applied for security purposes was unreasonable, and
hence unnecessary in the strict sense.  <u>Whitley</u>, 475 U.S. at 319.

With respect to the September 27, 2007 incident, the parties
provide differing accounts.  Defendants provided evidence that
Plaintiff disobeyed orders and assaulted one or more officers and
they took the actions they did in an attempt to secure Plaintiff
and restore order.  Plaintiff's evidence is that Brown did not
give him a direct order to remove his shirt, but instead told him

---

[7] A prison disturbance may be a riot or a lesser disruption;
for example "whenever guards use force to keep order."  <u>See</u>
<u>Hudson</u>, 503 U.S. at 6-7.

that he could not wear the thermal shirt.  He declares that
Brown's actions were unprovoked,  that he ducked to avoid the
pepper spray, and that other officers kicked, stomped, and
punched him.  Drumgo argues, "the record does not suggest that
[he] would have remained noncompliant if Brown had given him
clearer directions or issued a warning."  [D.I. 144 at 15.]

The contemporaneous incident reports prepared by Defendants
all indicate that Plaintiff refused direct orders to remove his
thermal shirt.  In Plaintiff's view there were no direct orders
but, rather, statements that he could not wear a thermal shirt
and, hence, he remained noncompliant.  Nonetheless, Plaintiff
admitted during his disciplinary hearing that he "might have
swung" at the can of pepper spray.  In addition, Plaintiff told
medical on October 30, 2007 that he had assaulted a correctional
officer.  Finally, the record reflects that Brown sustained
bruising to his temple, consistent with his affidavit that
Plaintiff struck him across the left temple area.  While
Plaintiff declares that he has headaches, back pain, and
numbness, the record reflects that when he was seen by medical
immediately following the incident he denied pain and there was
no bleeding, swelling, or discoloration.

The maneuvers used by Defendants were not out of the
ordinary in the context of controlling an inmate.  The evidence
indicates that, at the least, Plaintiff was non-compliant and, at

the most, he refused direct orders. By his own admission, at the very least, Plaintiff swatted the can of pepper spray away from Brown. The record reflects that Defendants took action after Plaintiff disobeyed or disregarded orders and acted aggressively towards correctional staff. Even construing the facts in the light most favorable to Plaintiff, Defendants' actions must be afforded substantial latitude given Plaintiff's actions relative to his safety and that of the correctional officers. Accordingly, the Court finds that "the need for the application of force" was on account of "the extent of the threat to the safety of staff and inmates" that Plaintiff's conduct posed and done in a good faith effort to maintain or restore discipline. Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (citation omitted).

Finally, although it is not required that Plaintiff show he suffered more than a de minimis injury to maintain his excessive force claim, see Wilkins v. Gaddy, __U.S.__, 130 S.Ct. 1175, 1179-1180 (2010) (noting that the notion that significant injury is a threshold requirement for stating an excessive force claim was rejected in Hudson v. McMillian, 503 U.S. at 7), the "absence of [a] serious injury" nevertheless remains relevant. See Wilkins, 130 S.Ct. at 1179-1180 (holding in an Eighth Amendment inquiry that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who

complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim") (citing <u>Hudson</u>, 503 U.S. at 9 (internal quotations omitted). Other than his self-serving statements, Plaintiff has failed to produce any evidence showing a discernible injury.

Based upon the record, a reasonable jury could not find that, under these circumstances, Defendants used force "maliciously and sadistically to cause harm". Inasmuch as no reasonable jury could find that Defendants used excessive force, it follows that Plaintiff similarly cannot prevail on his claim that Defendants failed to protect him or intervene from the use of force.[8] For the above reasons, the Court will grant Defendants' motion for summary judgment on the issue of excessive force and failure to protect.

---

[8] A corrections officer's failure to intervene in a beating can be the basis of liability under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002). A pretrial detainee presenting a failure to protect or intervene claim must plead that the prison official acted with deliberate indifference to the detainee's health or safety. <u>See</u> <u>Paulino v. Burlington City. Jail,</u> 2011 WL 2909056, at * 2 (3d Cir. July 21, 2011) (citing <u>Caiozzo v. Koreman</u>, 581 F.3d 63, 71 (2d Cir. 2009)).

## C.  Respondeat Superior/Personal Involvement

Defendants move for summary judgment on behalf of Hawkins on the basis that the claims raised against her are based upon her supervisory position.  Plaintiff argues that Hawkins should be held accountable for not properly investigating his complaints regarding the September 27, 2007 occurrence and the alleged retaliation that followed.[9]

As is well established, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009).  In Iqbal, the Supreme Court emphasized that "[i]n a § 1983 suit -- here masters do not answer for the

---

[9] Plaintiff's failure to intervene claim is addressed herein above.  There is no evidence of record of Hawkins' personal involvement in the failure to intervene claim.  Plaintiff did not identify Hawkins as being present during the September 27, 2007, although Hawkins did speak to Plaintiff after the incident.

torts of their servants -- the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  <u>Iqbal</u>, 129 S.Ct. at 1949.  "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."  <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting <u>Iqbal</u>, 129 S.Ct. at 1949.)  The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue.  <u>Id.</u>

Plaintiff seeks to hold Hawkins liable for her alleged failure to investigate his complaints.  However, there is no mandatory duty upon Hawkins to investigate.  See <u>Schaeffer v. Wilson</u>, 240 F. App'x 974, 976 (3d Cir. 2007) (not published) (citing <u>Inmates of Attica Corr. Facility v. Rockefeller,</u> 477 F.2d 375, 382 (2d Cir. 1973) (inmates failed to state a claim against state officials for failing to investigate or prosecute civil rights violations)).  Hence, Plaintiff's allegations that Hawkins failed to take action following his complaints fail to rise to the level of a constitutional violation.  See <u>Brooks v. Beard</u>, 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations

that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation).

In addition, there is no evidence of record that Hawkins participated in the September 27, 2007 occurrence or in the alleged retaliation that followed. Nor is there evidence of record that Hawkins expressly directed the deprivation of Plaintiff's constitutional rights, or created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation.

No reasonable jury could find that Hawkins violated Plaintiff's constitutional rights. Accordingly, the Court will grant Defendants' motion for summary judgment as to the claims raised against Hawkins.

**D. Retaliation**

Plaintiff claims that McGill and Thomas tampered with his food in retaliation for his altercation with Brown. Defendants move for summary judgment on the grounds that, not only is the claim unsubstantiated, but also, it fails as a matter of law.

To prevail on a retaliation claim, a plaintiff must demonstrate that: (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse

action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001) (quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-225 (3d Cir. 2000)).

Plaintiff has failed to tie the food tampering to any constitutionally protected activity in which he was engaged. Notably, the September 27, 2007 incident and Plaintiff's actions during the altercation do not rise to the level of protected activity. In addition, the record fails to establish that the few incidents of food tampering were sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights.[10]  Indeed, the evidence of record

---

[10] Plaintiff alleges food tampering on two occasions; once when he was served chili, and the second time when he was served chicken. Defendants refer to feces found on Plaintiff's food tray in their motion for summary judgment as evidence of his "incorrigible behavior" that resulted in a disciplinary write-up and finding of guilt. [Docket Item 100 at 10.]  Plaintiff responds that he received the feces laden tray from Thomas but did not notice it or go to the window because he "already suspected who was serving the trays" and had refused to eat. Plaintiff's grievance about food contamination makes no reference to any feces on his tray, see n. 3, <u>supra</u>.  Plaintiff raised no claim of feces contamination in the complaint or amended complaint.  Nor does his declaration reference feces contamination.  Therefore, this undocumented and unsworn allegation cannot be considered in this summary judgment motion, see Rule 56(c), Fed. R. Civ. P.  Even if Plaintiff's version is assumed true, nonetheless, the evidence of record does not indicate the act is tied to protected activity.

indicates that subsequent to the food tampering, Plaintiff filed
a grievance, wrote letters, and ultimately filed the instant
lawsuit. Obviously the contaminated food did not deter Plaintiff
from exercising his right to access the courts. Finally, while
Plaintiff concludes that the alleged tampering was due to his
altercation, other than his conclusory statements, he failed to
present any evidence to support his claim. Plaintiff argues,
without supporting evidence, that he was told the contaminated
food was courtesy of "Reggie Downtown Brown," but his declaration
makes no mention of this alleged statement. [Docket Item 114 at
8.]

Even assuming that the food contamination involving a
hairball and saliva occurred, it was nothing short of a gross
insult. Notably, there is no evidence of record that Plaintiff
ate the contaminated food or contracted any illness from it. The
Constitution does not protect inmates (or anyone else) from gross
insults by public officials, including prison guards. Moreover,
Section 1997e(e) of the Prison Litigation Reform Act, 42 U.S.C. §
1997e(e), prohibits compensatory damages for mental or emotional
injury absent allegations of physical injury. Allah v. Al-
Hafeez, 226 F.3d 247, 251 (3d Cir. 2000). While § 1997e(e)
limits recovery of compensatory damages, it does not bar
prisoners from seeking nominal damages or punitive damages to
vindicate constitutional rights. See id., at 251; Doe v. Delie,

257 F.3d 309, 314 n.3 (3d Cir. 2001).  Plaintiff, however, seeks

only compensatory damages for his alleged mental and physical

abuse.  [Docket Items 2, 9.]   Plaintiff suffered no injury from

the contaminated food.  Because Plaintiff suffered no physical

injury and seeks only compensatory damages, any potential food

contamination claim for mental abuse due to the food

contamination is barred by § 1997e(e).

For the above reasons, the Court will grant Defendants'

motion for summary judgment on the retaliation claim and will

deny Plaintiff's motion for summary judgment on the same claim.

### E.  Access to the Courts

Defendants move for summary judgment on Plaintiff's access

to the courts claim on the grounds that there is no actual

injury.  In addition, they move for summary judgment on the basis

that the taking of Plaintiff's legal property claim is not

actionable under § 1983.  Plaintiff opposes the motion on the

grounds that Maans threw away his legal materials prior to a

hearing after Plaintiff received a disciplinary charge for having

non-allowable items in his cell.

Prisoners must be allowed "adequate, effective and

meaningful" access to the courts.  Bounds v. Smith, 430 U.S. 817,

822 (1977) (holding that prisons must give inmates access to law

libraries or direct legal assistance).  "Many courts have found a

cause of action for violation of the right of access stated where

it was alleged that prison officials confiscated and/or destroyed legal materials." Zilich v. Lucht, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted). However, a violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit. Lewis v. Casey, 518 U.S. 343, 351 (1996); Christopher v. Harbury, 536 U .S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). An actual injury is shown only where a nonfrivolous, arguable claim is lost. Christopher, 536 U.S. at 415.

The record does not reflect a violation of Plaintiff's right to access the courts, or actual injury, as a result of any taking of his legal materials. It is evident from Plaintiff's filings that he has been able to prosecute his civil lawsuit. Moreover, with regard to his missing legal documents, Delaware law provides an adequate remedy for Plaintiff, and therefore, he cannot maintain a cause of action for loss of said property pursuant to § 1983. See Hudson v. Palmer, 468 U.S. 517, 535 (1984); See Parratt v. Taylor, 451 U.S. 527, 542 (1981); Nicholson v. Carroll, 390 F. Supp. 2d 429, 435 (D. Del. 2005); Acierno v. Preit-Rubin, Inc., 199 F.R.D. 157 (D. Del. 2001).

For the above reasons, the Court will grant Defendants'
motion for summary judgment on the access to the courts claim.

**F.  Religion**

Defendants move for summary judgment to the extent that
Plaintiff claims his right to exercise his religion has been
curtailed because he was denied his Bible after it was
confiscated during a cell shakedown.  Plaintiff responds that the
Bible had religious and/or spiritual significance to him.

The First Amendment provides that "Congress shall make no
law respecting an establishment of religion, or prohibiting the
free exercise thereof . . . ."  U.S. Const. amend. I.  Prisoners
do not forfeit this right by reason of their conviction and
confinement in prison, but the right is limited.  See DeHart v.
Horn, 227 F.3d 47, 50-51 (3d Cir. 2000).  To establish a
violation of the Free Exercise Clause, Plaintiff must show that
he was prevented from engaging in his religion without any
justification reasonably related to legitimate penological
interests.  Turner v. Safley, 482 U.S. 78, 89 (1987).  To
determine whether a restriction is reasonably related to
legitimate penological interests, the court weighs four factors:
(1) there must be a "valid, rational connection" between the
prison regulation and the legitimate governmental interest put
forward to justify it; (2) whether inmates retain an alternative
means of exercising the circumscribed right; (3) the costs that

accommodating the right would impose on other inmates, guards, and prison resources generally; and (4) whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.  See DeHart, 227 F.3d at 51.

The evidence of record does not demonstrate a violation of Plaintiff's free exercise rights with regard to the taking of his religious books.  Both the Bible and the Quran were confiscated from Plaintiff's cell because DOC policy only allows one such book per cell.  The Quran was returned to Plaintiff and the Bible was held for evidence pending Plaintiff's disciplinary hearing.

The prison's interest in maintaining a safe and secure institution for inmates and prison personnel is paramount and prison rules regulate what an inmate may possess in his cell.  Notably, Plaintiff is not totally precluded from possessing a holy book, be it a Bible or Quran, and his Quran was returned to him.  In light of the foregoing, the Court concludes that the prison's legitimate interest in maintaining a safe and secure institution is rationally connected to the institutional policy that inmates may not have more than one Bible or Quran in a cell.

Accordingly, the Court will grant Defendants' motion for summary judgment on the First Amendment religion issue.

## IV. CONCLUSION

The Defendants' motion for summary judgment is granted.  The Plaintiff's motion for summary judgment is denied.[11]

The accompanying Order will be entered.


**December 16, 2011**               **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    United States District Judge

---

[11] The Court sees no need to address the issue of qualified immunity inasmuch as there has been no violation of Plaintiff's constitutional rights.